(No. 3803—

LULA THOMPSON, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed May 8, 1945.*

JOSEPH W. KOUCKY, for claimant.

GEORGE F. BARRETT, Attorney General; WILLIAM L. MORGAN, Assistant Attorney General, for respondent.

ECKERT, J.

On April 12, 1943, the claimant, Lula Thompson, an employee of the respondent at the Chicago State Hospital, while in the discharge of her duties supervising a group of patients, fell and sustained a fracture of the neck of the left femur with displacement in posterior rotation.

The wage of the claimant for the year next preceding her injury was $1,060.80, or an average weekly wage of $20.40. She had no children under sixteen years of age; her compensation rate is therefore $10.20, plus 10%, or $11.22. The respondent furnished medical, hospital and surgical services in part only, and paid claimant temporary total disability for a period of six months following the injury. Claim is made for further temporary total compensation, for reimbursement for additional medical, hospital, and surgical expenses paid by claimant, and for permanent loss of use of claimant's left leg.

At the time of the accident, claimant and respondent were operating under the provisions of the Workmen's Compensation Act of this State, and notice of the accident and claim for compensation were made within the time provided by the Act. The accident arose out of and in the course of the employment.

Immediately after the injury occurred, claimant was taken to the employees' hospital unit at the Chicago State Hospital where x-rays were taken, and claimant was placed under the care of Dr. George Procopie, a part time physician and surgeon employed by the respondent. She remained under his care until January 7, 1944.

On April 29, 1943, an operation was performed to reduce the fracture and to insert a Smith-Peterson nail. At the request of the claimant and her family, Dr. Nathan Lans assisted Dr. Procopie in this operation. Claimant paid Dr. Procopie $200.00, and Dr. Lans $80.00 for these services. Claimant also paid a charge of $8.00 for the Smith-Peterson pin, and a charge of $60.00 for a portable x-ray incurred because claimant could not be moved to the x-ray room of the Chicago State Hospital, which had no portable machine.

Following the operation, a union did not occur, and there was some disagreement between Dr. Procopie and Dr. Lans as to further treatment. In January, 1944, claimant told Dr. Procopie that she wanted to go to Grant Hospital to have an operation performed there by Dr. Lans. Dr. Lans notified Dr. Procopie to the same effect on the same day, and claimant was accordingly removed under the direction of Dr. Lans to Grant Hospital. At Grant Hospital, a Schantz Osteotomy was performed on claimant's left hip, by Dr. Seidler and Dr. Lans. This resulted in a shortening of the left leg. Claimant remained in Grant Hospital for three weeks, and was then returned to the Chicago State Hospital where she was attended by Dr. Lans. Dr. Seidler and Dr. Lans made a charge of $200.00 for the second operation, which was also paid by claimant, and Dr. Lans made a charge of $50.00 for his care subsequent to the second operation. This item remains unpaid. The charges of Grant Hospital were $208.90, and there was a charge of $14.00 for ambulance to return claimant from the Grant Hospital to the Chicago State Hospital.

Claimant remained in the Chicago State Hospital until June 27, 1944, a period of sixty-three weeks of hospitalization; and continued to be totally disabled for several months after her discharge. Testifying in her own behalf, she stated that her left knee is now very stiff, that she can not bend her hip, that she has difficulty putting on her shoes and stockings, that she can not bend over far enough to tie her shoe strings, and that her left ankle and knee are both swollen.

Dr. Albert C. Field, called as a witness on behalf of claimant, testified that he first examined claimant on August 3, 1944, and that he took x-rays at that time. He stated that from his examination and from the x-rays, he

found that claimant's left knee was swollen, measuring 17¼ inches, whereas her right knee measured 16¼ inches; that there was some atrophy in claimant's left thigh, which measured 16¼ inches, whereas the right thigh measured 16¾ inches; that the left knee was held in a flexed deformity; that there was limitation of extension of about twenty-five degrees; that the left knee was "practically ankylozed"; that there was little abduction in the left hip, and a little internal and external rotation. The doctor testified that the condition of the left hip was permanent and that in his opinion claimant had lost all industrial use of her left leg.

Dr. Lans testified that claimant's left leg is now about an inch and three-fourths shorter than her right leg; that as a result of this shortening, she limps and has difficulty in stooping down; that she suffers no pain, but that the leg is ankylosed in the socket; and that the ankylosis interferes with the movement of the leg in the socket. Dr. Lans also testified that in his opinion, claimant had lost all industrial use of her left leg, and that the condition is permanent.

From a consideration of the medical testimony, from an examination of the x-rays submitted in evidence, and from personal observation of the claimant, the court is of the opinion that claimant has suffered a seventy-five per cent permanent loss of use of her left leg. She is, therefore, entitled to an award of 75% of 190 weeks at $11.22 per week, or $1,598.85 for such permanent injury.

Claimant is also entitled to an award for temporary total disability for a period of not to exceed sixty-four weeks, as provided by Section 8(e) of the Workmen's Compensation Act, at $11.22 per week, or $718.08. From this amount must be deducted the compensation paid to her during the six months immediately following the in-

jury, or the sum of $291.72, leaving a balance due claimant of $426.36.

Claimant is also entitled to be reimbursed for part of the medical services incurred and paid by her, to-wit:

For the services of Dr. Procopie.................................. $200.00
For the use of the portable x-ray............................. 60.00
For the use of the Smith-Peterson pin........................ 8.00

Or a total of............................................. $268.00

No other medical, surgical, or hospital services can be allowed, however, because claimant elected to secure her own physician, surgeon, and hospital services at her own expense.

Award is therefore entered in favor of the claimant in the sum of $2,293.21, payable as follows:

1. The sum of $268.00 reimbursement for medical services, payable forthwith.

2. The sum of $426.36, the balance due on account of temporary total disability, payable forthwith.

3. The sum of $493.68 on account of permanent, specific injury, which has accrued, and is payable forthwith.

4. The balance of $1,105.17 in weekly installments of $11.22 per week beginning May 8, 1945, for a period of 98 weeks with an additional final payment of $5.61.